*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RITTERSDORF, Minors.

UNPUBLISHED
July 18, 2019

No. 346702
Montcalm Circuit Court
Family Division
LC No. 2017-000799-NA

Before: SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Respondent-mother appeals from an order of the circuit court terminating her parental rights to the minor children. We reverse and remand.

Respondent is the mother of MR and HR.[1] She was incarcerated in the Kent County Jail when HR was born on August 31, 2017. MR was two months shy of her fifth birthday. The day after HR's birth, petitioner filed a petition in the family division and the children were removed. The children were returned a week later when respondent bonded out of the jail. Approximately one month later, respondent was again arrested on two retail fraud charges and the children were again removed. In between, the trial court held a pretrial hearing, at which respondent admitted to an allegation in the petition, namely that both she and HR had tested positive for cocaine at his birth, and the court assumed jurisdiction.

---

[1] Respondent also has two older children who were included in the petition and were teenagers at the time of the termination hearing. Her parental rights to those two children were not terminated and are not part of this appeal. The children's father, respondent's ex-husband, was also a party to this proceeding and his parental rights were terminated as to all four children. He is not, however, a party to this appeal.

At the termination hearing, the only testimony presented by petitioner was that of respondent.[2] She admitted that she had had a drug addiction issue, specifically with respect to opiates and cocaine. She additionally admitted to committing a number of retail frauds in order to support her drug habit. According to respondent, she was incarcerated in the Kent County Jail until January 11, 2018, at which time she was transferred to prison. She testified that she participated in AA/NA and other programs while in the Kent County Jail. She stated that once in prison she participated in programs there, including NA/AA, National Lifers Association, Healing and Trauma, House of Healing, Moving On, Parting Inside Out, Grief and Loss, and Advanced Substance Abuse Treatment. She stated that she intended to remain sober once paroled, continuing with NA and AA.[3] Her additional testimony largely centered on her success in these programs, her desire to continue her progress and get her life straightened out, and to be reunited with her children.

Respondent called two witnesses on her behalf, her aunt and her former father-in-law (the children's grandfather).[4] They essentially served as character witnesses.

After terminating the father's parental rights to all four children, the trial court turned to the request to terminate respondent's rights to the two younger children. The trial court found that three statutory grounds for termination existed: MCL 712A.19b(3)(c) (failure to rectify the conditions that led to adjudication), MCL 712A.19b(3)(g) (failure to provide proper care and custody for the children), and MCL 712A.19b(3)(j) (there is a reasonable likelihood of harm if the children are returned to the home). The trial court then determined that it was in the children's best interests to terminate respondent's parental rights.

On appeal, respondent argues that the trial court erred both in determining that the statutory grounds for termination exist and that it was in the children's best interests to terminate her parental rights. We agree and reverse.

We review for clear error a trial court's factual findings as well as its ultimate determination that a statutory ground for termination of parental rights has been proved by clear and convincing evidence. MCR 3.977(J); *In re Trejo Minors,* 462 Mich 341, 356–357, 612 NW2d 407 (2000). " 'A finding is "clearly erroneous" [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has

---

[2] Petitioner also presented respondent father's testimony, but that was largely only relevant to the issue whether his parental rights should be terminated.

[3] She testified that her "out date" was November 14, 2018, a few days after the hearing. But according to the Offender Tracking and Information System (OTIS), she was not paroled until February 12, 2019.

[4] The two older children were placed with the grandfather after the removal from the home. The younger two children were placed in a separate foster home.

been made.' " *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989) (citation omitted). [*In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).]

We are left with a definite and firm conviction that the trial court was mistaken in determining that the statutory grounds for termination had been proved by clear and convincing evidence.

We initially note that there are, in fact, significant issues related to respondent and her ability to parent these children. We do not dispute that intervention by the family court was necessary. Nor are we suggesting that the children should be immediately returned to respondent and the case closed. Indeed, respondent's counsel did not even suggest that in her closing argument; rather, counsel argued for continued court supervision after respondent's imminent parole to determine if she had benefited from the services she availed herself of in prison and could continue to make progress once paroled and be able to resume responsibility to parent her children.

As noted above, the only testimony presented by petitioner was calling respondent as a witness. And, while respondent did freely admit to her problems that led to the removal of the children, she also testified to the efforts that she made while in prison to address those problems. That testimony went unrebutted. Indeed, the trial court itself even commented in its decision on the positive steps taken by respondent:

> At this time, I commend the mother for the efforts she has made. It appears and the testimony supports that she was a model prisoner and that she took full advantage of the services that were made available to her while incarcerated. Those services include AA or NA one time per week. Healing and Trauma, which were five sessions over a period of five days to assist her in avoiding unhealthy relationships. The House of Healing, which was a grief and loss coping skill program that met one time per week—and I don't recall how long that was but I know she completed it. Parenting Inside Out three times per week and based on the—I can't—exhibits, I believe it was one and two, she excelled in those—that program. She also participated in Advance Substance Abuse Treatment which was four times per week for four months. There was another class or counseling, Grief and Loss, which was one time per week for three months. Moving On, which was an unhealthy relationship abused women platform that met two times per week for three months. And Shoplifting Anonymous, which she was not able to complete because, as the Court understands correctly, she's going to be released before she can complete the program.

Despite the trial court's acknowledgement of respondent's efforts and success with these programs in prison, the court determined that the grounds for termination were met because these programs only took place while in prison and that it would be impossible to determine, within a reasonable time, whether she benefitted from these programs with respect to her life outside of prison. The court further emphasized the need, given the children's young ages, of permanency within a reasonable time. Indeed, this is a theme that the court repeated in reaching its conclusions on each of the three statutory grounds.

With respect to § 19b(3)(c), the trial court stated:

> The conditions that led to adjudication continue to exist. Ms. Cavanaugh cannot demonstrate any benefit. She's still incarcerated. Granted, she gets out next Wednesday, but to prove or show any benefit would take at least a year, nine months to a year at a minimum, and these children would have been out of the home by then for 25 months, if my math is right. No, 28 months. That's simply too long. She hasn't shown benefit, not for the lack of effort, it's because she's been incarcerated and she can't prove benefit. She received those recommendations. She's been given a reasonable opportunity. Unfortunately, her incarceration has prevented her from showing that she's benefited from the programs. And the kicker for this Court is she can't show, in this Court's opinion, that the conditions that led to the Court assuming jurisdiction can be rectified within a reasonable time.

The trial court made a similar observation with respect to § 19b(3)(g):

> The Court has already referenced the services she's provided—been provided and for which she availed herself of, but she hasn't shown benefit and can't prove benefit because she's in prison. But the kicker with this case as far as the Court's concerned is that she cannot, within a reasonable time considering the children's age, 14 months and six years old, show that she's benefited within a reasonable time, it's going to be another nine months to a year. That's simply too long for these children not to have permanence, and what if she fails? What if she doesn't make it?

And this theme continues with respect to § 19b(3)(j):

> The mother acknowledges that she's been addicted to opiates for ten years, beginning with a—like many of these cases that we have addiction—beginning with a doctor's prescription. But that's been ongoing now for ten years and it evolved into a substantial degree of opioid abuse, which the mother, to her credit, acknowledges. In fact, her testimony was very frank today about her involvement with drugs and shoplifting. But at this point, she's still incarcerated, and there's simply no evidence that she's benefited from the programs. Being able to be drug free and shoplifting agree in prison is something that should be able to be maintained. And I kind of agree with [respondent's aunt's testimony] that if you know where to get drugs in prison, I'm sure you can get them. It's no secret that there are drugs in prison. But at this point, I can't find that the children won't be harmed especially—I mean, [MR and HR]—won't be harmed if they return to her home.

In sum, the trial court essentially concluded that, although respondent made an effort and progress in prison, because it cannot ensure that that progress will extend once she's released, her rights must be terminated. But, the Supreme Court in *Mason* made it clear that incarceration cannot be the sole basis for termination.

-4-

The respondent in *Mason* had his parental rights terminated under the same statutory grounds as respondent in this case. The Court was extremely critical of how the matter was handled with respect to the father's incarceration:

> As the earlier discussion suggests, the state's failures in this case (which are all too common in this type of case) appear to stem primarily from the fact of respondent's incarceration. Not only did the state fail to properly include him in the proceedings, but the circuit court's ultimate decision in the case was replete with clear factual errors and errors of law that essentially resulted in the termination of respondent's parental rights solely because of his incarceration. The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination. [*Mason*, 486 Mich at 160; footnote omitted.]

In addressing the individual statutory grounds for termination, the Court made these observations:

> Finally, we turn to the substance of the other grounds for termination. Under MCL 712A.19b(3)(c)(*i*), the DHS must show by clear and convincing evidence that "182 or more days have elapsed since the issuance of an initial dispositional order," that the "conditions that led to the adjudication continue to exist," and that "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Under MCL 712A.19b(3)(g), the DHS must show that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." As under MCL 712A.19b(3)(h), each of these grounds requires clear and convincing proof that the parent has not provided proper care and custody and will not be able to provide proper care and custody within a reasonable time. As such, these additional grounds are factually repetitive and wholly encompassed by MCL 712A.19b(3)(h). Because the court erred in evaluating whether respondent could care for his children in the future, either personally or through his relatives, termination under MCL 712A.19b(3)(c)(*i*) or (g) was also premature.
>
> The only other ground alleged for termination was that in MCL 712A.19b(3)(j): "There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Termination on this ground was clearly erroneous because no evidence showed that the children would be harmed if they lived with respondent upon his release. Significantly, just as incarceration alone does not constitute grounds for termination, a criminal history alone does not justify termination. Rather, termination solely because of a parent's past violence or crime is justified only under certain enumerated circumstances, including when the parent created an unreasonable risk of serious abuse or death of a child, if the parent was convicted of felony assault resulting in the injury of one of his own

-5-

children, or if the parent committed murder, attempted murder, or voluntary manslaughter of one of his own children. MCL 712A.19a(2); MCL 722.638(1) and (2). The DHS did not present any evidence suggesting that respondent had ever harmed a child. Indeed, the errors in this case are particularly troubling given that respondent's criminal history consisted largely of short jail stints for comparatively minor offenses. The record shows that he supported his family before his imprisonment and no evaluation was ever conducted to gauge whether he was likely to offend again. [*Mason*, 486 Mich at 164-165.]

The problems in *Mason* were more extensive than in our case as the father in *Mason* was also precluded from meaningful participation in the process. But many similarities nonetheless exist. The *Mason* Court began its analysis with the following observation:

> The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated. In this case, once again, the DHS's efforts focused exclusively on the custodial mother and essentially ignored the father. "Reasonable efforts to reunify the child and family must be made in *all* cases" except those involving aggravated circumstances not present in this case. MCL 712A.19a(2) (emphasis added). Here, because the DHS and the court failed to adhere to court rules and statutes, respondent was not afforded a meaningful and adequate opportunity to participate. Therefore, termination of his parental rights was premature.

Respondent was not ignored in this case. Nor was she denied a meaningful and adequate opportunity to participate in the process. But what was ignored was providing her an opportunity to be reunified with her children. That is, an opportunity to demonstrate that the substantial efforts that she made while in prison—efforts that the trial court itself acknowledged—could be carried over into the outside world.

The trial court might well be correct that respondent might ultimately be unable to overcome her problems and be able to adequately parent these children. We do not ignore or minimize that possibility. But neither do we have a crystal ball to tell us that her efforts are for naught. She has expressed a desire and willingness to face her demons and the trial court did not question her sincerity in doing so. She should have been provided the opportunity to do so upon her release from prison.

As the *Mason* Court concluded in that case, we also conclude here: termination of parental rights was premature. Instead of terminating parental rights, the trial court should have continued the wardship and provided continuing services to respondent following her release from prison. If she were to fail to take advantage of those services, relapse in her addiction, or return to her criminal activity, then perhaps there will be a need for the trial court to revisit the question of termination of parental rights. But as Justice CORRIGAN so aptly observed in *Mason*, respondent's incarceration did not relieve the state of its obligation to attempt to reunify respondent with her children. It is only after a meaningful opportunity to be reunified has failed that termination of parental rights is a viable option.

Because we conclude the trial court clearly erred in finding that a statutory ground existed for termination, we need not address respondent's argument that termination was not in the children's best interests.

We reverse the trial court's order terminating respondent's parental rights to the minor children and remand the matter to the trial for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro